IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RHINE ENTERPRISES LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-810-DWD |
| | ) |
| REFRESCO BEVERAGE US, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

In this removed matter, Plaintiff Rhine Enterprises LLC, d/b/a Southern Illinois Beverage seeks to recover damages from Defendant Refresco Beverage US, Inc. for alleged violations of the Illinois Franchise Disclosure Act ("IFDA"), 815 Ill. Comp. Stat. Ann. 705/1, *et seq.* After the Court dismissed Plaintiff's complaint without prejudice (Doc. 19), Plaintiff filed its First Amended Complaint on February 21, 2022 (Doc. 20). Now before the Court is Defendant's Motion to Dismiss the First Amended Complaint (Doc. 21) and Memorandum in Support (Doc. 22), to which Plaintiff timely filed a response (Doc. 27). For the reasons detailed below, the Motion will be denied.

## Amended Complaint

Plaintiff alleges the following facts, which for the purposes of this motion are taken as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Plaintiff is a franchisee who distributes beverages to locations throughout Southern Illinois for various manufacturers (Doc. 20). Defendant produces and markets assorted beverages and sells its products

1

through various distributors or franchisees throughout the United States. In or about 2011, Plaintiff purchased Southern Illinois Beverage ("SIB") from its predecessor. Through this acquisition, Plaintiff acquired the rights under an existing written agreement made between Defendant and Plaintiff's predecessor (the "Agreement").[1] Defendant acknowledged and approved this ownership change, and the Agreement "continued through written and oral communications, course of conduct, and customs and practices between SIB and Defendant." (Doc. 20, ¶¶ 7-9).

Under the Agreement, SIB was to be Defendant's "exclusive distributor for its Vess beverages" in designated areas of the Illinois counties of St. Clair, Bond, Clinton, Madison, and Monroe (Doc. 20, ¶ 8). In exchange, Plaintiff was required to purchase products from Defendant to resell (Doc. 20, ¶ 8).[2] However, because the products did not have an established market in the area or were in excess of reasonable consumer demand, Plaintiff could not sell the products at the suggested retail price, or at a reasonable markup, resulting in economic losses (Doc. 20, ¶¶ 10-12). Defendant sometimes reimbursed Plaintiff for these losses, but not always (Doc. 20, ¶¶ 13-14).

On January 5, 2021, Defendant provided Plaintiff with an annual review for its 2020 figures, along with goals for the 2021 year (Doc. 20, ¶ 28). On or about April 20, 2021, Defendant terminated Plaintiff's exclusive distributorship, stating that "SIB's consistent pattern of payment delinquency continues to impact the sale of Vess product

---

[1] Plaintiff alleges that the Agreement was made in writing, but a copy of the written agreement is not attached to the Amended Complaint (Doc. 21, ¶¶ 8-9).
[2] Plaintiff alleges further details of the Agreement's terms in its amended complaint, (*See* Doc. 20, ¶¶ 16-24) (describing a marketing plan and use of Defendant's trademark), but those allegations are not specifically relevant to the parties' current dispute.

in Illinois" even though Plaintiff fully performed its obligations under the Agreement (Doc. 20, ¶¶ 27-31). Plaintiff maintains that Defendant's reason for termination was pretextual so Defendant could contract with a competitor (Doc. 20, ¶ 30), and was therefore without "good cause" in violation Section 19 of the Illinois Franchise Disclosure Act ("IFDA"), 815 Ill. Comp. Stat. Ann. 705/19 ("Count I") and Defendant's duty of good faith and fair dealing ("Count II").

### Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising,* LLC, 887 F.3d 329, 333 (7th Cir. 2018) (internal quotations and citation omitted); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing the complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in Plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).

### Discussion

Count I of Plaintiff's complaint alleges the wrongful termination of a franchise in violation of Section 19 of the Illinois Franchise Disclosure Act. The IFDA regulates the relationship between franchisees and franchisors in the State of Illinois, including the

franchisor's ability to terminate a franchise relationship. *See P & W Supply Co. v. E.I. DuPont de Nemours & Co.*, 747 F. Supp. 1262, 1264 (N.D. Ill. 1990). Section 19 prohibits franchisors from terminating a "franchise" "prior to the expiration of its term except for 'good cause.'" 815 Ill. Comp. Stat. Ann. 705/19. The IFDA defines a "franchise" as "a contract or agreement, either express or implied, whether oral or written, between two or more persons by which:

> (a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and
>
> (b) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and
>
> (c) the person granted the right to engage in such business is required to pay to the franchisor or an affiliate of the franchisor, directly or indirectly, a franchise fee of $500 or more"

815 Ill. Comp. Stat. Ann. 705/3(1); *P & W Supply Co.*, 747 F. Supp. at 1264. Plaintiff must establish all three elements for a franchise relationship to exist. *See Mech. Rubber & Supply Co. v. Am. Saw & Mfg. Co.*, 810 F. Supp. 986, 991 (C.D. Ill. 1990).

Defendant argues that Plaintiff's Count I should be dismissed for at least three reasons. First, Defendant maintains that Plaintiff failed to allege the existence of a valid "franchise" under the IFDA because Plaintiff cannot show payment of a $500 franchise fee. Second, Defendant argues that Plaintiff cannot show that the franchise ended "prior to the expiration of its term" because Plaintiff did not specify the duration of the alleged franchise agreement. Finally, Defendant argues that Plaintiff's claim violates the Illinois

Statue of Frauds, 740 Ill. Comp. Stat. Ann. 80/1, because Plaintiff cannot procure a written agreement between the parties.

### A. $500 Franchise Fee

An element of a "franchise" under the IFDA requires that the franchisee "pay to the franchisor or an affiliate of the franchisor, directly or indirectly a franchise fee of $500 or more." 815 Ill. Comp. Stat. Ann. 705/3(1)(c). The IFDA defines "franchise fee" as:

> any fee or charge that a franchisee is required to pay directly or indirectly for the right to enter into a business or sell, resell, or distribute goods, services or franchises under an agreement, including, but not limited to, any such payment for goods or services, provided that the Administrator may by rule define what constitutes an indirect franchise fee, and provided further that the following shall not be considered the payment of a franchise fee: (a) the payment of a reasonable service charge to the issuer of a credit card by an establishment accepting or honoring such credit card; (b) amounts paid to a trading stamp company by a person issuing trading stamps in connection with the retail sale of merchandise or services; (c) the purchase or agreement to purchase goods for which there is an established market at a bona fide wholesale price; (d) the payment for fixtures necessary to operate the business; (e) the payment of rent which reflects payment for the economic value of the property; or (f) the purchase or agreement to purchase goods for which there is an established market at a bona fide retail price subject to a bona fide commission or compensation plan. The Administrator may by rule define what shall constitute an established market.

815 Ill. Comp. Stat. Ann 705/3(14).

The relevant regulations further clarify that a franchise fee includes "any payment(s) in excess of $500 that is required to be paid by a franchisee to the franchisor … unless specifically excluded by Section 3(14)." Ill. Admin. Code tit. 14, § 200.105(a). Further, Ill. Admin. Code tit. 14, § 200.104 provides that franchise fees:

> [M]ay be present regardless of the designation given to or the form of the fee, whether payable in lump sum or installments, definite or indefinite in

5

amount, or partly or wholly contingent on future sales, profits, purchases for the franchise business, or the sale or transfer of the franchisee's business.

Plaintiff alleges that it paid Defendant an indirect franchise fee in excess of $500 over the course of their Agreement because Defendant did not reimburse Plaintiff for all of the unsold product Plaintiff was required to purchase under the Agreement (Doc. 20, ¶¶ 10, 15). Defendant argues that the plain language of the IFDA explicitly excludes this purchase of goods from the definition of a franchise fee. *See* 815 Ill. Comp. Stat. Ann 705/3(14)(c) ("the following shall not be considered the payment of a franchise fee … (c) the purchase or agreement to purchase goods for which there is an established market at a bona fide wholesale price"). However, Plaintiff contends that its losses from the unsold inventory reveal that Defendant charged Plaintiff more than a bona fide wholesale price for its products, such that this exclusion cannot apply.

Indeed, in the amended complaint, Plaintiff alleges that some of the product it was required to purchase under the franchise agreement "was in excess of reasonable consumer demand" because there was no established market in Plaintiff's territories for the products to be resold (Doc. 20, ¶¶ 10-15). Plaintiff further alleges that its inability to resell Defendant's product at fair market value resulted in losses in excess of $500.00. The plain language of Section 3/14(c) suggests that a purchase of goods in excess of a bona fide wholesale price or for which there is <u>not</u> an established market may be considered an indirect franchise fee. Moreover, the corresponding regulations provide that an indirect franchise fee exists, despite the bona fide wholesale or retail price exceptions, "if the buyer is required to purchase a quantity of goods so unreasonably large that such goods

may not be resold within a reasonable time." Ill. Admin. Code tit. 14, § 200.108; *see also Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 136 (7th Cir. 1990) (noting that "the cost of excess inventory" may constitute an indirect franchise fee in Illinois). Therefore, at this stage, Plaintiff's allegations of overpayments for unsold inventory in excess of $500.00 are enough to survive dismissal. *See Flynn Beverage Inc. v. Joseph E. Seagram & Sons, Inc.*, 815 F. Supp. 1174, 1179 (C.D. Ill. 1993) ("As noted by the Seventh Circuit, 'investments in excess inventory may constitute and [*sic*] indirect franchise fee.") *P & W Supply Co.*, 747 F. Supp. at 1266 ("Plaintiff's allegation that it was required to purchase products that he could not sell in the normal course of trade might reasonably fit within this exception" to withstand dismissal).

### B.     Duration of the Franchise

Defendant next argues that Plaintiff cannot allege a violation of Section 19 because Plaintiff has failed to specify the duration of the alleged franchise. Section 19 requires, in part, that the franchise be terminated "prior to the expiration of its term." 815 Ill. Comp. Stat. Ann. 705/19. In the amended complaint, Plaintiff alleges that the Agreement's duration was "for an indefinite period and continued from year to year." (Doc. 20, ¶ 9). Defendant contends that these allegations are inconsistent, and thus fail to specify the "definite and certain terms" needed to plead the existence of a contract.

Preliminarily, the Court observes that an agreement "for an indefinite period" and one that continues "from year-to-year" are not inevitably inconsistent. *See, e.g., Burford v. Acct. Prac. Sales, Inc.*, 786 F.3d 582 (7th Cir. 2015), *overruled on other grounds by LHO Chicago River, L.L.C. v. Perillo*, 942 F.3d 384 (7th Cir. 2019) (observing that a year-to-year

7

contract that is automatically renewable without either party taking action is of an indefinite duration); *see also R.J.N. Corp. v. Connelly Food Prod., Inc.*, 175 Ill. App. 3d 655 (1988) (a contract has a definite duration if it can be read to terminate upon the occurrence of an objective event). Moreover, the IFDA's "good cause" termination requirement applies equally to the early termination of a fixed-term franchise and franchises of indefinite periods. *Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.*, 933 F. Supp. 1381, 1393–94 (N.D. Ill. 1996); *7-Eleven, Inc. v. Dar*, 325 Ill. App. 3d 399, 407 (2001). Thus, at this stage, it is not plainly apparent that Plaintiff is required to plead the exact terms regarding the duration of the alleged franchise to sustain a plausible claim under the IFDA.

The Court previously declined to determine whether the IFDA requires Plaintiff to plead the specific terms of the alleged franchise agreement akin to establishing the existence of a contract under Illinois law. *See Rhine Enterprises LLC v. Refresco Beverage US, Inc.*, No. 21-CV-810-DWD, 2022 WL 195109, at *3 (S.D. Ill. Jan. 22, 2022). Instead, the Court observed that the plain language of Section 19 requires the alleged franchise to "still be in effect when it is terminated by the franchisor." *Id.*; *see also* 815 Ill. Comp. Stat. Ann. 705/19(a) ("It shall be a violation of this Act for a franchisor to terminate a franchise … prior to the expiration of its term"). In the First Amended Complaint, Plaintiff alleges that the franchise was still in effect in 2021 by virtue of Defendant's renewal email, and that Defendant terminated the franchise before the expiration of its term in April 2021 (Doc. 20, ¶¶ 27-28). This satisfies the plain language of Section 19, which finds a violation of the IFDA if the franchise termination was "prior to the expiration of its term" and without good cause. *See, e.g. Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910,

917–18 (7th Cir. 2007). Plaintiff has thus alleged that the franchise was still in effect when it was terminated by Defendant without good cause and before the expiration of its term, and the Court again declines to find that a specified duration akin to the pleading standards of a valid contract is required to sustain a claim under the IFDA.[3]

### C. Statute of Frauds

Finally, Defendant argues that Plaintiff's claims are barred by the Illinois Statute of Frauds, 740 Ill. Comp. Stat. Ann. 80/1, because Plaintiff cannot procure a written agreement. The Statute of Frauds provides:

> No action shall be brought . . . whereby to charge the defendant . . . upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.

While the IFDA permits oral franchises, *see* 815 Ill. Comp. Stat. Ann. 705/3(1), Defendant argues that the statute of frauds precludes Plaintiff's action here. In general, whether an agreement is subject to the statute of frauds depends on whether "the contract was capable of being performed within one year after its formation" and not whether performance actually occurred within that time or if such occurrence is likely. *See Barnes v. Michalski*, 399 Ill. App. 3d 254 (2010); *Hirtzer v. Avery Dennison Corp.*, 265 F. Supp. 2d

---

[3] While some agreements may fit within the contours of both a franchise and contract, "the IFDA imposes extracontractual rules" on the parties, *see Honeywell Int'l, Inc. v. Automated Bldg. Controls, LLC*, No. 16 C 6828, 2016 WL 5349462, at *6 (N.D. Ill. Sept. 22, 2016), and overrides express provisions of contracts. *See Servpro Indus., Inc. v. Schmidt*, No. 94 C 5866, 1996 WL 400066, at *8 (N.D. Ill. July 15, 1996). As such, the Court declines to read additional pleading requirements into the statute here. *See H.R.R. Zimmerman Co. v. Tecumseh Prod. Co.*, No. 99 C 5437, 2001 WL 1356153, at *9 (N.D. Ill. Nov. 2, 2001), *adopted as modified*, No. 99 C 5437, 2002 WL 31018302 (N.D. Ill. Sept. 9, 2002) ("Illinois and federal courts agree that the court must initially look to the language of the statute, which must be given its plain and ordinary meaning if possible.").

936 (N.D. Ill. 2003) ("In Illinois, the statute of frauds has been determined to mean that an oral contract is unenforceable only if it is impossible to perform the contract within one year.") (internal citations and markings omitted); *Armagan v. Pesha*, 2014 IL App (1st) 121840.

Defendant argues that the alleged agreement – whether it is one of "an indefinite period" or "continued from year-to-year" inevitably requires a written agreement because such performance cannot be completed in one year. However, oral agreements that do not specify a duration or continue longer than a year do not always require a written agreement, so long as performance could be performed within one year. *Hartbarger v. SCA Servs., Inc.*, 200 Ill. App. 3d 1000, 1016 (1990) (an oral agreement for the payment of $200,000 and for which payments were scheduled to be made in three transactions over a course of multiple years did not offend the statute of frauds because the "transactions could have been completed within one year."); *Hirtzer*, 265 F. Supp. 2d 936; *Armagan*, 2014 IL App (1st) 121840 (if an oral agreement could be performed within one year, it does not come within the statute of frauds).

Moreover, the statute of frauds normally constitutes an affirmative defense and is not generally a basis for dismissal pursuant to a motion to dismiss because it does not attack the sufficiency of the complaint. *See Goldwater v. Greenberg*, 2017 IL App (1st) 163003, ¶ 10 ("[T]he statute of frauds is an affirmative defense which, if established, renders a contract voidable, not void."); *In re German*, 193 F. Supp. 948 (S.D. Ill. 1961); *see also*, *Hirtzer*, 265 F. Supp. 2d 936 (issue of whether agreement could be fully performed within one year presented fact questions that could not be resolved on motion to dismiss);

*Armagan*, 2014 IL App (1st) 121840, at n.1 ("The statute of frauds consists an affirmative matter outside the facts alleged in a complaint.").

Nevertheless, construing the allegations in the First Amended Complaint as a whole, Plaintiff does allege the existence of a written agreement or note thereof. Plaintiff alleges that a writing existed when the franchise was formed (Doc. 20, ¶ 8) ("Upon information and belief, the initial Agreement with SIB's prior owner was a written agreement"). At the pleading stage this is enough to survive dismissal. *First Nat. Bank in Staunton v. McBride Chevrolet, Inc.*, 267 Ill. App. 3d 367, 374 (1994) ("Facts supporting the existence of a written contract which satisfies the statute of frauds must be pleaded or reasonably inferable from facts which have been pleaded."). Likewise, Plaintiff also references a renewal correspondence from Defendant dated January 5, 2021 (Doc. 20, ¶ 28). The statute of frauds requires either a written agreement "or some memorandum or note thereof" signed by the party to be charged, *see Taylor v. Canteen Corp.*, 69 F.3d 773 (7th Cir. 1995), and may consist of several different documents, and in a variety of different forms, such as letters, notes or papers. *See Prodromos v. Howard Sav. Bank*, 295 Ill. App. 3d 470 (1998); *Bower v. Jones*, 978 F.2d 1004 (7th Cir. 1992). As the existence of a writing that satisfies the statute of frauds is reasonably inferable from the facts alleged, Plaintiff's Count I survives dismissal.

The parties' briefing does not otherwise address their positions as to the sufficiency of Count II of Plaintiff's complaint. Nevertheless, because the IFDA prohibits the termination of a franchise except where good cause exits, Illinois courts read an implied covenant of good faith into franchise agreements unless there is an express

provision in the agreement permitting cancellation without good cause. *See 7-Eleven, Inc.*, 325 Ill. App. 3d 399; *Flynn Beverage Inc.*, 815 F. Supp. at 1180 (citing *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972 (1984)). Accordingly, the allegations in the complaint are also sufficient to withstand dismissal of Count II.

### Conclusion

For these reasons, Defendant's Motion to Dismiss (Doc. 21) is **DENIED**.

**SO ORDERED.**

Dated: July 5, 2022

_____
DAVID W. DUGAN
United States District Judge